UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1 YLLI DIDANI,

        Defendant.

Case No. 21-cr-20264

HON. DENISE PAGE HOOD
United States District Judge

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS HEARING REGARDING VALIDITY OF CERTIFICATES (ECF No. 118)

### I.  INTRODUCTION

In April 2024, the Court granted the Government's Motion for Pretrial Determination as to Jurisdiction. The Court held that it had jurisdiction "in light of the consent by Liberia, Malta, and Germany in 2022, prior to Didani's indictment and the Secretary's certifications in July 2022." (ECF No. 93, PageID.1132). Didani did not timely file a motion for reconsideration, nor did he appeal the Court's ruling. Now, eight months later, Didani moves the Court to revisit the already decided issue and in doing so, misrepresents both the facts and the law. For the following reasons, Didani's motion should be denied.

## II.   RELEVANT FACTUAL BACKGROUND[1]

On three occasions in 2019 and 2020, law enforcement in the Netherlands, seized large quantities of cocaine from shipping containers after the containers arrived via shipping vessels at the Port of Rotterdam. The three shipping vessels involved were the Cartegena Express – registered in Germany; the CMA CGM Jean Gabriel – registered in the Republic of Malta; and the MSC Anisha R – registered in the Republic of Liberia. As part of discovery in this matter, the United States produced copies of the three Certifications contemplated by 46 U.S.C. § 70502(c)(2)(B), which bear the signature of the United States Secretary of State, Antony J. Blinken and his designee, United States Coast Guard Commander Ian M. Starr. (Exhibit 1, Certification Cartegena Express; Exhibit 2, Certification CMA CGM Jean Gabriel; Exhibit 3, Certification MSC Anisha R).

The Certifications for the Cartegena Express and the CMA CGM Jean Gabriel describe seizures of cocaine, which the government alleges belonged to Didani and his coconspirators. The Certification for the Anisha R describes two cocaine seizures – one the government alleges involved Didani – and one that did not.

The three Certifications, which are dated July 21, 2022, set forth several facts.

---

[1] In addition to the facts contained in this pleading, the government incorporates by reference the facts contained in its previously filed motion and brief in support of motion for pretrial determination as to jurisdiction. (ECF No. 57, PageID.356-357, 359-364).

The Certifications set forth that the United States requested that the respective Governments (Germany, Republic of Malta, and the Republic of Liberia) waive their jurisdiction for the enforcement of United States law by the United States with respect to the three specified vessels. Two Certifications set forth that the Governments for Germany and the Republic of Liberia notified the United States that they had no objection to enforcement of United States law over the specified vessels. (Exhibit 1, Certification Cartegena Express; Exhibit 3, Certification MSC Anisha R). And one Certification sets forth that the Government for the Republic of Malta notified the United States that it had waived its right to exercise jurisdiction over the specified vessel. (Exhibit 2, Certification CMA CGM Jean Gabriel).

**A. Certification for the Cartagena Express – Germany**

Government's attached Exhibit 1, the Certification for the Cartegena Express, details the following:

- On or about April 7, 2020, Dutch authorities discovered approximately 1000 kilograms of cocaine aboard the Cartegena Express in the Port of Rotterdam.
- The seizure was the result of an ongoing investigation with the DEA and the United States Attorney's Office for the Eastern District of Michigan.
- The Cartagena Express was registered in Germany.
- On or about November 24, 2021, the United States requested that the

Government of Germany consent or waive objection to the enforcement of United States law by the United States with respect to the Cartagena Express.

- On or about January 31, 2022, the Government of Germany replied that it had no objections to the enforcement of the law of the United States by the United States with respect to the Cartagena Express.

**B. Certification for the CMA CGM Jean Gabriel – Republic of Malta**

Government's attached Exhibit 2, the Certification for the CMA CGM Jean Gabriel, details the following:

- On or about February 22, 2020, Dutch authorities discovered 644 kilograms of cocaine in a container aboard the CMA CGM Jean Gabriel in the Port of Rotterdam.

- The seizure was the result of an ongoing investigation with the DEA and the United States Attorney's Office for the Eastern District of Michigan.

- The CMA CGM Jean Gabriel was registered in the Republic of Malta.

- On or about October 7, 2021, the United States requested that the Government of the Republic of Malta waive objection to the enforcement of United States law by the United States with respect to the CMA CGM Jean Gabriel.

- On or about December 21, 2021, the Government of the Republic of Malta

4

replied that it waived jurisdiction for the purposes of enforcement of United States law by the United States with respect to the CMA CGM Jean Gabriel.

### C. Certification for the MSC Anisha R – Republic of Liberia

Government's attached Exhibit 3, the Certification for the MSC Anisha R, detailed two separate seizures. One seizure involved the DEA and the United States Attorney's Office for the Eastern District of Michigan. The other seizure involved the United States Department of Homeland Security. The Certification further detailed:

- On or about August 11, 2019, Dutch authorities discovered 753 kilograms of cocaine in a container offloaded in the Port of Rotterdam that came from the MSC Anisha R in the Port of Rotterdam.

- The seizure was the result of an ongoing investigation with the DEA and the United States Attorney's Office for the Eastern District of Michigan.

- On or about October 30, 2020, Panamanian authorities discovered 776 kilograms of cocaine in a container offloaded in the Port of Panama that came from a container aboard the MSC Anisha R in the Port of Rotterdam

- The seizure was the result of an ongoing investigation with the United States Department of Homeland Security, Homeland Security Investigations.

- The MSC Anisha R was registered in the Republic of Liberia.

- On or about February 12, 2021, the United States requested that the Government of the Republic of Liberia waive objection to the enforcement of United States law by the United States with respect to the MSC Anisha R.

- On or about August 16, 2021, the Government of the Republic of Liberia replied that it had no objections to the enforcement of the laws of the United States by the United States with respect to the MSC Anisha R.

- On or about October 27, 2021, the United States requested that the Government of Liberia confirm that its August 16, 2021, response could be extended to the August 11, 2019, seizure of 753 kilograms of cocaine in the Netherlands.

- On or about December 29, 2021, the Government of the Republic of Liberia replied that it had no objections to once more yielding jurisdiction to the United States with respect to the MSC Anisha R.

### III. PRETRIAL DETERMINATION OF JURISDICTION

Didani is charged in count two of a superseding indictment with conspiracy to possess with intent to distribute and distribute a controlled substance on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(b) of the Maritime Drug Law Enforcement Act ("MDLEA").

"Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. §70504(a). Accord *United States v. Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *United States v. Miranda*, 780 F.3d 1185, 1192-93 (D.C. Cir. 2015); *United States v. Brant-Epigmelio*, No. 8:09-cr-404-T-23TGW, 2010 WL 557283, at *3 (M.D. Fla. Feb. 11, 2010). "[T]he term 'vessel subject to the jurisdiction of the United States' includes … a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. §70502(c)(1)(C). Accord *United States v. Brant-Epigmelio*, 429 F. App'x 860, 862 (11th Cir. 2011). "Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States … is proved conclusively by certification of the Secretary of State or the Secretary's designee." *Id*. § 70502(c)(2)(B). Accord *Brant-Epigmelio*, 429 F. App'x at 862.

Armed with the three Certifications, the government previously moved the Court for a pretrial determination as to jurisdiction. (ECF No. 57, PageID.355-367). On April 17, 2024, the Court granted the government's motion holding that "the Court has jurisdiction of the vessels, in light of the consent by Liberia, Malta, and Germany in 2022, prior to Didani's indictment and the Secretary's certifications in July 2022." (ECF No. 93, PageID.1132).

### A. Didani Is not entitled to an evidentiary hearing

Didani has moved for an evidentiary hearing so he can question United States Coast Guard Commander Ian Starr, who was the declarant on the three Certifications. However, Didani is not entitled to an evidentiary hearing to challenge the Certifications because the Certifications conclusively prove that Germany, Malta, and Liberia consented or waived objection of enforcement of United States law by the United States over the three vessels. Didani's prior counsel conceded as much at the April 24, 2023, evidentiary hearing when he stated:

> "My client wishes to subpoena the commander who signed the consent forms for jurisdiction in the United States. As his attorney, my advice has been, in my reading of the law as well as my expert witness, that we do not have standing to challenge the adequacy of the certification documents." (ECF No.77, PageID.825, 826).

Didani's prior counsel also stated, "It's my belief under case law we don't have standing to challenge if they're conclusively proved." (ECF No.77, PageID.825, 826). Didani's prior counsel is correct. Courts that have addressed this issue have repeatedly held that a defendant is not permitted to challenge a certification's conclusive proof of jurisdiction. For example, in *United States v. Cardales–Luna,* 632 F.3d 731 (1st Cir. 2011), the First Circuit held that a defendant could not argue that a United States Coast Guard certification was insufficient to confer MDLEA jurisdiction merely because it omitted certain details about the

process by which the Coast Guard contacted the foreign country based on the defendant's claim of nationality. In rejecting the defendant's claim the Court held that the MDLEA does not permit a defendant to look behind the State Department's certification to challenge its representations." *Id.* at 737. The Court stated that the certification is conclusive and that any question about its legitimacy is "a question of international law that can be raised only by the foreign nation." *Id*. (quoting *United States v. Bustos-Useche*, 273 F.3d 622, 627 &n.5 (5th Cir. 2001)).

Likewise, in *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014), the defendant attempted to challenge a Coast Guard Commander's written certification, arguing that the certification lacked details about the communications between the Coast Guard and the foreign country. The defendant also argued that the United States did not offer any testimony to corroborate the certification. *Id*. at 809. The Court rejected the defendant's argument explaining that the statements in the certification "provided conclusive proof that the vessel was within the jurisdiction of the United States." *Id.*

The same issue was addressed in *United States v. Hernandez*, 864 F.3d 1292 (11th Cir, 2017). There, the Court held that the certification's conclusive proof prevented any inquiry into its veracity, stating, "[t]he very concept of a conclusive proof entails not only that no detail or corroboration is needed, but also that any contrary evidence is futile." *Id*. at 1300. This is so because "Congress instructs

specifically that courts should treat the MDLEA certification as conclusive of the foreign nation's response." *Id.*

A defendant is not even permitted to challenge a certificate that he believes contains declarations that were made in bad faith. Instead, "claims of bad faith may only be lodged by the country that is contacted… not the defendants in a MDLEA prosecution." *United States v. Bautista Ortiz*, 808 F. App'x 984 (11th Cir. 2020). In *Bautista Ortiz*, the Court held that even if the defendant's bad faith claims were true, "the district court did not abuse its discretion in failing to hold an evidentiary hearing because those facts cannot overcome the State Department's conclusive proof of jurisdiction." *Id*. at 988.

As the government pointed out in prior pleadings, the Secretary of State's Certifications make clear that Germany (Cartegena Express), the Republic of Malta (CMA CGM Jean Gabriel), and the Republic of Liberia (MSC Anisha R) waived their right to exercise primary jurisdiction over the respective vessels. 46 U.S.C. § 70502(c)(1)(C). And because the waivers by those governments are proven conclusively by the respective Certifications, those three vessels are subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(2)(B). Therefore, Didani is foreclosed from challenging the Certifications or the statements contained in them.

In his attempt to undo this Court's prior order holding that the three vessels are subject to the jurisdiction of the United States Court, Didani relies on several

false statements of law and fact. For starters, Didani incorrectly asserts that "[t]he government must obtain consent to prosecute the case in the United States from the foreign nations where the drugs were seized." (ECF No. 118, PageID.1330). The plain language of the MDLEA reveals that Didani is wrong. Under the MDLEA, the phrase "vessel subject to the jurisdiction of the United States" is defined to include six different categories of vessels, one of which is "a vessel registered in a foreign nation if that nation has consented or waived objection to enforcement of United States law by the United States." *Id.* § 70502(c)(1)(C). That is what occurred here. The nations where the three vessels were registered, Germany, Malta, and Liberia, all consented or waived objection to enforcement of United States law over the vessels.

Didani questions why all three Certifications were dated July 21, 2022. Even if Didani was permitted to challenge the Certifications, the government is at a loss as to why Didani believes this is an issue. The Certifications are all dated July 21, 2022, for one simple reason – that is the day they were all signed. While the process of requesting and obtaining consent from the foreign nations occurred at different times, as described in the Certifications, the Certifications themselves were all signed on the same day after that process was completed.

Didani also takes exception to the fact that Commander Starr signed the Certifications instead of his predecessor. In doing so, Didani falsely claims that

11

Commander Starr's statements were based solely "upon his personal knowledge." However, none of this matters because as explained above, Didani is not permitted to challenge the Certifications. And even if he was, the three Certifications make clear that Commander Starr's statements were made based upon his personal knowledge *and upon information furnished to him in the course of his official duties*. And as the Certifications clearly indicate, Commander Starr, who was the Coast Guard Liaison Officer to the Bureau of International and Law Enforcement Affairs, United States State Department since June 13, 2022, was designated by the Secretary of State to make certifications under § 70502(c)(2). (See Exhibits 1, 2, and 3).

Didani also claims that the Certifications are invalid because there was no "interdiction, there is no boarding" and because "none of the countries were contacted when those vessels were traveling in the high seas." Again, the three Certifications are conclusive proof of United States jurisdiction over the vessels. And even if they weren't, the MDLEA does not require that the foreign county be contacted when the vessel is traveling on the high seas. Instead, consent can be obtained well after an interdiction or seizure. See e.g., *United States v. Cardales*, 168 F.3d 548, 552 (1st Cir. 1999) (MDLEA's jurisdictional requirement satisfied although consent provided after Coast Guard boarded ship); *United States v. Mitchell-Hunter*, 663 F.3d 45, 50 n.1 (1st Cir. 2011) (No error in basing jurisdiction on a certificate that was created after boarding and arrest but prior to trial); *United*

*States v. Greer*, 285 F.3d 158, 175–76 (2d Cir. 2002) (upholding MDLEA jurisdiction based on flag-state consent provided five years after the fact: "consent given any time prior to trial achieves the purpose of [the MDLEA, and]…consent under the MDLEA can relate back to activity that occurred before consent"); *United States v. Bustos-Useche*, 273 F.3d 622, 627 (5th Cir. 2001) (the "only statutory prerequisite to the district court's jurisdiction" pursuant to subsection (c)(1)(C) "is that the flag nation consent to the enforcement of United States law before trial"); *United States v. Juda*, 46 F.3d 961, 966 (9th Cir. 1995) ("when MDLEA jurisdiction is premised on consent of the flag nation, such consent relates back to activity that occurred prior to consent"); *United States v. Khan*, 35 F.3d 426, 431 (9th Cir.1994) ("[T]he timing of ... consent is irrelevant"); *United States v. Devila*, 216 F.3d 1009, 1017 (11th Cir. 2000) ("while the individuals may challenge jurisdiction over a vessel on the basis that the flag nation failed to consent before trial, they may not do so on the basis that the flag nation's consent was obtained after the vessel was boarded").

Here, the vessels were not interdicted as sea. Instead, the cocaine was seized after the vessels arrived in the Port of Rotterdam. Therefore, under the facts here, the MDLEA imposes none of the requirements on the government that Didani wants to impose.

Didani also expresses skepticism of the Certification relating to the Republic of Liberia and the Anisha R because it contains details for two seizures – one in the Netherlands and one in Panama. (Exhibit 3, Certification MSC Anisha R). There is no mystery here. The Certification in question describes both seizures and it identifies that one of the seizures was part of an investigation involving the DEA and the United States Attorney's Office for the Eastern District of Michigan. The Certification also details that initially the United States only sought consent from Liberia for the enforcement of United States law relating to one of the seizures – the Panama seizure. The Certification then explains that additional consent was later sought to enforce United States law for the seizure involving the DEA and the United States Attorney's Office for the Eastern District of Michigan. Didani implies that there is some nefarious motive here but the reason both seizures ended up being identified in the same Certification is spelled out in the Certification itself – the seizures both involved the same vessel – the Anisha R. And again, Didani does not have standing to even raise this issue.

Didani's request to have a hearing where he can question Commander Starr is nothing more than a fishing expedition to satisfy Didani's curiosity about topics that he is wrong about. While Didani is representing himself, and as a result, may not be as skilled in the law as a seasoned attorney, he should also not be granted hearings

in order to advance irrelevant arguments and arguments that this Court has already rejected.

## IV. CONCLUSION

Didani wants to relitigate claims that that the Court has already rejected. In doing so, he misstates the facts, and he misstates and misapplies the law. Based on the foregoing reasons, the United States respectfully requests that the Court deny his motion to dismiss and deny his request for a hearing regarding the validity of the Certifications.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*s/Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-9623
mark.bilkovic@usdoj.gov

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Phone: (313) 226-0221
timothy.mcdonald@usdoj.gov


Dated: December 28, 2024